We have three cases scheduled for oral argument this morning. The first one is Kickstarter, Inc. v. Fan Fueled, LLC. Mr. Smith? Mr. Smith, I understand you have reserved two minutes for rebuttal time. Is that correct? That's correct, Your Honor. Okay, you may proceed. Thank you, Your Honor. Good morning. May it please the Court, my name is Craig Smith. I represent Fan Funded and Art of Share in this appeal. I'm going to focus on the 101 issues today. And in particular, I'm going to focus on two particular issues that we think justify reversal of the District Court's judgment. The first issue is the burden that the District Court did not apply in this particular case. And the second is we believe that the District Court did not properly apply the two-step analysis that's required under ALICE. Starting with the burden question, in this particular case, as in any case, every patent is entitled to the presumption of validity. Section 282 is clear on that point. And that puts the burden on the person challenging that patent in order to be able to set forth... Is that question fully settled? Whether validity, the presumption of validity applies in a Section 101 inquiry? We think it is, Your Honor, for several reasons. The two reasons why I would say I think it is settled law is the Supreme Court's decision in Microsoft v. IPI made it very clear the presumption of validity applies. The burden is always there on the challenger. It never changes. It's a constant burden and that it requires clear evidence in order to be able to surmount that burden. Does that apply to both the factual issues and the legal issues? I mean, if you look at Justice Breyer's concurrence in I for I, he says it just applies to factual issues. We would disagree that you would separate them out, that you would take a burden and then say, well, it only applies to the factual issues in play, not to the legal issues in play. How can you have a clear and convincing standard for a legal question? Well, I think many legal questions, as we know this Court deals with, have underlying factual issues. Well, right. That's what Judge Stoll just asked you. Does it apply to only the factual questions or does it apply to the ultimate legal question as well? That's correct, Your Honor. I would say it applies to both because of the fact that the legal issue that is being decided by the Court has underlying factual issues, so you can't separate the two from them. But if there are no factual issues, then how do you come up with what's clear and convincing evidence? I mean, you're using the word evidence. Evidence is not something you use to arrive at a legal conclusion. I think with regard to the word evidence, I think the better word is standard, clear and convincing standard. Let me ask you this hypothetical. Let's assume we know exactly what the reach and bounds of a patent is, what it's directed to, what it's claiming, everything. There's no dispute about the facts. Where, then, does a clear and convincing evidence? So they've met on all those factual determinations. They've proven every single one of those items by clear and convincing evidence. Then isn't it just a pure question of law as to whether it fits within the eligible categories under 101 or not? To make sure I understand the hypothetical, if all of the underlying factual determinations have been made, you're asking whether or not the legal conclusion made by the court has to be made to satisfy the clear and convincing standard. Is that right, Your Honor? So I think in that scenario, yes, it still has to meet the clear and convincing standard. It's a clear and convincing legal conclusion as opposed to a regular legal conclusion. I think the court looking at what it has to decide, meaning for a 101 challenge. Do you have any support whatsoever where we've ever set a legal conclusion? Not the underlying facts, but the legal conclusion has to be supported by a clear and convincing evidence standard. I would provide to you this court's en banc decision when dealing with CLS Bank and Alice. A five-member portion of the court had an opinion that said presumption of validity applies to the 101 issue, which is a legal issue. Doesn't it have underlying factual issues? I'm sorry. Section 101, you think it has underlying factual issues, right? That's correct. So why isn't that what the court was referring to in CLS Bank? I mean, I can't say what the court was specifically referring to. It's our interpretation that based on the majority opinion stating that clear and convincing standard applies to the 101 decision and then another four-member group in a concurring opinion saying it's the clear and convincing evidence standard that applies, our interpretation is that has to mean that the decision under 101 still has to meet the threshold burden of clear and convincing, that you don't diminish the burden simply because 101 is ultimately a legal issue. So our view is that the court dispensed with this burden, and it dispensed with this burden so that the appellee in this case didn't have to present clear evidence of its position, and that infected the entire opinion that the court rendered. What are the factual issues underlying the 101 analysis here that you see? What are the factual issues? So I think there are several factual issues that come up. In this case, I think in particular two that are important is the court looked at what it considered to be known and routine components of the claims. It did this without really focusing on the actual what would be the facts that would consider known routine, but stated that these are known and routine elements. That to us is a factual determination to say that looking at the elements of a claim, we are going to determine that those are known and routine elements suggests that it's a reference to something that is in fact known and routine. Well, what do you think that the court looked at that it said was known and routine that's not known and routine? For example, the court actually laid out a number of elements for the claim. The thing that the court, in our view, specifically didn't mention was the fact that all of these claims require software tools, and these software tools are provided by a server from and allowing remotely accessible tools like web-based tools. Where in any of those words you just said is anything that's not known and routine? There are no examples that we can find, and it certainly wasn't pointed out in the record, where there is someone who has provided a platform for artists where they now have access to tools that allow them to manage a project. You're getting too specific, though. I mean, that's not what the district court referred to as known and routine. What the district court referred to as known and routine is a server. You would agree that a server is known and routine, right? Yes, Your Honor. Software is known and routine. Correct, Your Honor. A web presence, online access, all of that is known and routine, right? Correct. Taking each individual word or component and saying, is that… But that's what we do. I mean, we have dozens of cases where we look at these one-on-one cases, and we say all these conventional elements of computers and the Internet and the like are known and routine. And so then we look at what your patent is directed to. And I would respond, Your Honor, that in looking at what the claims are directed to, there are novel software tools. Yes, but just a minute ago you were complaining that the district court relied on factual conclusions about known and routine items that you thought weren't known and routine, and everything you recited you just conceded was known and routine. So what factual conclusion did the district court draw that wasn't known and routine? I wouldn't concede that I acknowledge that all of the elements are known and routine. Would you want to go through them again? I mean, server, computer software, the Internet, anything else? The claims have much more specific than just those elements, Your Honor. Did the district court call those much more specific elements known and routine? Yes. Which ones? The court went through almost every element of the claim with the exception of a few and said, these are known and routine elements, and so walk through claims. Which one specifically did the district court say that's known and routine that you think is not known and routine? For example, the provision of software tools to manage a project. Can you tell me where that is? Oh, sure. I'm sorry. Your Honor, it would be on A146 in the record. This is claim one of the patent in suit. So you think a website that provides software tools is not known and routine? In this context, no, it is not known and routine, Your Honor. Okay. It seems to me that the claims don't even raise the question whether it's known and routine. I mean, software tools, server, these have no amount of specificity to them. It's just a very general description. I mean, how do we know what software tools are being utilized? It says software tools. Right, Your Honor. I think what's novel about this is that there wasn't in the prior art, and we're not aware of any real world. Well, we're not looking at prior art. This is 101. We're looking at what the claims are directed to, and if the claims are directed to a server or software tools, it just seems to me that that's almost at the very height of a generalization. I would disagree, Your Honor, because I think if you look at the claim as a whole, we're not just talking about. Well, I have. I mean, when you go through the claim as a whole, claim one, which is representative, I don't see any type of limitation on these very broad and general statements that almost anybody knows or understands with respect to a computer, a server, a software tool. Those are extremely generalized statements, and there's. . . In response, Your Honor, I would say that there are many patents that have sort of known routines or known pieces to them, but the combination of them makes them unique and makes them patentable, and the fact that in this situation there are elements of this claim. Okay, so the combination of them makes them unique and patentable. That's a legal question, isn't it, in this situation in 101? Correct, Your Honor. Okay. And so we would submit that. . . We were asking you what are the factual issues, and it seems to me you haven't cited any as of now. I think the whole question of known and routine is a factual issue, because in order to be able to determine whether something is known and routine, there would, in our view, need to be some evidence to support where does the court or where does the. . . Well, perhaps if you're talking about a specific type of function of a database and have different structures or you explode out the software tool and now you have an architecture of structure, and then the argument becomes whether those are known and routine, but that doesn't exist here. All you have is a term software tool. I mean, to me, I'm not even sure that raises a question whether it's known or routine. I mean, conventional and well-known. It is, but I'm not sure it raises the question. A software tool, a server? We think it does, Your Honor, because it provides a complete invention, meaning looking at all the claims as a whole. I think one of the concerns we've seen with this court and others is that if you take apart just the individual elements and you just identify one piece of it and say, well, this, having a computer or having the Internet is known and routine, that is one way to look at it, but I don't think it's the proper way to analyze the claim as a whole. Sorry. No, I just wanted to point out, just to make sure that we don't get off track, the idea is whether it's a technological improvement. Correct. Or whether it is an abstract idea that you're just putting on a computer and saying, apply it. Correct. And so that's where the focus should be. Correct, Your Honor. It's not whether each individual element is novel or conventional. But what do you have in your claim that shows that what you have here is a technological improvement on a computer as opposed to just an abstract idea of having patrons fund an artist and saying, I'm going to put it on a computer? Sure, Your Honor. So the claims as written talk about, first, the server. So the invention in more general terms is talking about it's created a platform, sometimes referred to as a fan-funding platform, which didn't exist before, meaning it was not something that was in real-world technology. It only existed once the internet became available and people could use it. And this platform now allows people for the first time, and artists now have a centralized place where they can manage their own projects. So there's software tools to manage the product and a centralized database that is able to take what the artist is providing and then help manage all of the facets that usually artists had to do on their own, meaning trying to figure out who would be interested in their projects, trying to find fans for their project. But this is something people did outside of the computer realm for years and years, right? Individual artists would certainly be looking for fans and people who would be willing to do it. There's never been a centralized platform where artists could come together and say, I am now going to present my ideas and my new album, my new artistic work to the world. What in the claim is the technological improvement? I think it's the combination of the fact that you have now a centralized way of being able to provide this platform. So you've got a server that provides these remotely accessible tools, and as a result of this, you are able to provide software tools that allow artists for the first time to be able to manage their project. Mr. Smith, you're well into your rebuttal time. I just noticed. Okay. Thank you, Your Honor. Sure. Mr. Counselor Brand. May it please the Court. Peter Brand for Kickstarter. The District Court properly concluded that this patent, which claims only the abstract and time-honored concept of patronage, was unpatentable under Section 101. We all know that abstract ideas are not patentable. In Step 1 under Alice, we look at whether or not the claims are directed to a patent ineligible concept. As this Court recently... Could you first address your opponent's argument concerning a burden-shifting requirement that arises if there's a factual issue in a 101 inquiry? I think that the oral argument today underscored what we took from the brief, which was that there was no underlying factual dispute at all where you would apply the heightened standard. You certainly could have a heightened standard if you were looking at the underlying facts, but there are no such facts in this case. We draw our point from Justice Breyer's concurrence that a legal issue isn't clear and convincing. You're either right or you're wrong, and it's simply a question of law. So there has not been any improper shifting of the burden. The District Court acknowledged the standard below in reaching the ruling, but noted that there were no disputed facts. So I think that disposes of that issue in its entirety. With regard to the substance of this, these claims are directed towards an abstract concept of patronage, which was basically the concept of raising funds for an artistic project from patrons in exchange for incentives. There's no dispute that's been around for a really long time, whether it's PBS, which I can remember from my childhood, or you go back to the days of the Medici's or barn raisings or whatever. The concept of getting together, raising money, and you get something for it has been around for a very long time. And as the Court this morning in a number of the questions have alluded to, you can't just say, well, do it on the Internet or do it on a computer or do it on a... and that will give you something that is, in fact, patentable. And there's no dispute that the underlying concept is of ancient literature. The problems that were identified in the patent to be solved are all business problems. The problems that were identified by the inventor were producing works without losing your rights, copyright infringement, and getting a wider audience. And, indeed, the patent in column 2, line 34 says, and we address this, quote, with the current business model of different artists, industries. In other words, we have a business problem of longstanding nature, and we address it using conventional and well-known manners in the business. So you can call it what you will. That doesn't change that that's an abstract concept. We don't think that the claims add any inventive concept. And as a number of the questions this morning have alluded to, the directions are all really functional. You do it on a computer, use a server, and so forth. And it's not only that, but it is language that is using very generic terms. I mean, as is the colloquy this morning, underscore, software tools, server, Internet, et cetera. And these are not like, you know, this is not the invention of a new server, or this is not something that is, this is how we're going to improve the computer functionality on a computer. Or, you know, which the court did recently in that Enfish case. Or we're going to solve a particular problem that's coming out of an issue that arises on the Internet. That DDR case, for example, in which you are looking at, well, how do we solve a problem that arises simply because you're on the Internet. We don't have any of that here. What we have is we're going to raise money for an artistic project, and we're going to do it on the Internet. And that's really all the claims really talk about. And there's no, without any further substance to those claims, that's not, that simply is just not patentable under a lot of cases. And, you know, certainly as I, you know, look at the cases that this court has decided recently, and you know far better than I, you know, how that applies. Did the summary judgment here apply to all the claims in the patent or just some of them? It was all of them. The section 101, the section 101 arguments apply to all of them, all of the claims for the entire patent. That is correct. And so some of the other arguments that the court never reached, you know, on obviousness, et cetera, only apply to a subset of the claims. But this one, it went to, you know, claim one as a representative claim and concluded there's no there there and concluded that the entire patent was not patentable under section one. I'm happy to address further questions if the court has them, but I don't think you want to hear my take on TLI and FISH. Thank you, sir. Thank you. Let's see. Thank you, Your Honor. We'll restore you back to two minutes of your time. That's very nice of you. Thank you, Your Honor. I appreciate it. I just want to make a couple of points. Listening to Apelli's argument, the suggestion seems to be that Kickstarter didn't have any burden in order to surmount the challenge of a 101 case in order to invalidate the patent, and we think that couldn't be the proper analysis here. The example is also provided by Apelli here. None of those examples are examples that would in any way involve the inventions that are in this case, and none of those examples were examples they even used to try to say that our patent would be invalid below. So the PBS analogy, all of those, those are not the real-world corollaries. There are no real-world corollaries to a fan-funding platform on the Internet. And the idea of patronage being an abstract… There's no real-world corollary of a fan-funding platform, meaning… But that's not the right question. I mean, of course there's no real-world corollary to the Internet before the Internet, but we felt in dozens of cases that taking something that was previously done in the real world, either on pen and paper or through other things, and just putting it on the Internet is not patent eligible. So what besides crowdfunding, which could… I mean, you're not disputing that there wasn't patronage before the Internet. So what besides putting patronage on the Internet do you claim? We claim a fan-funding platform, which is very different from the examples that are talked about as being real-world examples, meaning having someone be able to go out and say, I want to raise money for a project, is very different from a platform that allows artists to come together, be able to present their information to a group of fans. Fans can come to one location… Have you been to an art show? I mean, that's exactly what happens at art shows. A group of artists gets together, shows a bunch of their artwork, and people give them money for it. And sometimes they take orders for new works. I mean, this is all very, very ordinary. We would respectfully disagree, but I understand your position. I would also point out that even the concept of patronage, which has been used here, doesn't even apply to one of the claims in the case. Claim 17 of the case, which was never analyzed by Kickstarter, the cart, has nothing to do with patronage. And yet that was not actually addressed by the court or by Kickstarter at any time during its briefing. Finally, the appellee ended its argument indicating that the 101 issue applied to all of the claims. We'd submit that as actually incorrect, that the summary judgment briefing was dealing with the asserted claims in the case, and there are certainly claims that were not asserted in this case. Thank you for your attention. Thank you very much. Our next case is a state of David Rubenstein.